IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THOMAS P. WYNN,

        Petitioner,                No. CIV S-05-0799 FCD EFB P

    vs.

ROSEANNE CAMPBELL, et al.,

        Respondents.           FINDINGS AND RECOMMENDATIONS

_____/

       Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the decision of the California Board of Parole Hearings (hereinafter "Board") to deny him parole at his third parole consideration hearing held on August 20, 2003. He claims that the Board's decision violated state law, his Fourteenth Amendment right to due process, and his Eighth Amendment right to be free from cruel and unusual punishment. Petitioner also claims that he was denied parole as a result of an unlawful "no-parole" policy and that the Board members were biased against him. Upon careful consideration of the record and the applicable law, the undersigned finds that petitioner's application for habeas corpus relief must be denied.

////

////

1

**I. Procedural Background**

On April 20, 1987, after a court trial, petitioner was convicted of second degree murder. Answer, Ex. 1. He was sentenced to fifteen years to life in state prison. *Id.*; Pet. at consecutive p. 1.[1] Petitioner attended parole consideration hearings in 1996 and 1999, but was found unsuitable for parole at both hearings. Pet. at 4-19. The parole consideration hearing which is placed at issue in the instant petition was held on August 20, 2003. Answer, Ex. 4 (hereinafter "Decision"). On that date, a Board panel again found petitioner not suitable for parole and denied parole for three years. *Id.* at 101.

Petitioner challenged the Board's decision in a petition for writ of habeas corpus filed in the Ventura County Superior Court. Answer, Ex. 5. The Superior Court rejected petitioner's claims for the following reasons:

> Petitioner's ground for the writ as stated above is the Parole Board's decision to deny petitioner parole status. Petitioner contends that this decision violated both Federal and State Constitutions and State law, and further, that the Parole Commissioners are biased.
>
> Petitioner quotes at times, in his writ, a document that he identifies as (H.P.), such as, (2003 H.P. p. 59). This court makes the assumption that this is a transcript of the parole hearing and its findings. A brief recitation of selected portions of the hearing creates an insufficient record for this court to conclude that adequate grounds for relief have been shown. Petitioner should both state fully and with particularity the facts on which relief is sought as well as include copies of reasonably available documentary evidence supporting the claim. (*People v. Duvall* (1995) 9 Cal.4th 464.) For this reason, petitioner's application is denied.
>
> The court further takes on a brief discussion of petitioner's claim that the Commissioners may not find that the murder of which he was convicted was an especially cruel, callous, and dispassionate killing because it was not a first degree murder. Petitioner is incorrect. Second degree murder still requires malice, and an intent to kill, and can be committed in a cruel, callous manner.

---

[1] The court's citations to the record refer to the electronic numbering system on all documents filed electronically with the court.

> The petition could therefore fail on petitioner's assertion that the Commissioners were in error as a matter of law.
>
> For the foregoing reasons, the petition is denied.

*Id.* (emphasis in original).

Subsequently, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal for the Second Appellate District.  Answer, Ex. 6.  That petition was summarily denied by order dated April 1, 2008.  *Id.*  Petitioner then filed a petition for writ of habeas corpus in the California Supreme Court, which was summarily denied by order dated March 16, 2005.  Answer, Ex. 7.

On April 22, 2005, petitioner commenced this action by filing a federal petition for writ of habeas corpus.

## II.  Factual Background

The Board described the facts of petitioner's offense at the August 20, 2003 parole suitability hearing as follows:

> On May 27th, 1986, at approximately 8:30 Ventura Sheriff deputies responded to the – responded to the victim's residential farm.  On approach they noticed the prisoner later identified – Wynn, later identified as the prisoner, exit the residence. Responding deputies noted that Wynn appeared to display symptoms of being under the influence of cocaine or amphetamines as he appeared paranoid and nervous.  While walking through the residence jointly occupied by the prisoner and the victim, a deputy opened up a previously closed door and immediately upon doing so, he smelled a strong, pungent odor which he suspected to be a dead body later identified as the victim. Upon the discovery, the prisoner was handcuffed, arrested, and placed in a parole unit – or patrol unit.  At autopsy, a medical examiner identified the contusions on the victim's back were consistent with the shape of a baseball bat.  From lacerations on the back of the victim's head, it appeared that the victim had been struck at least three times on the head with a heavy, blunt object, possibly a lamp or a whiskey bottle.  Broken fragments of glass were found at the crime scene.  The cause of death was listed as trauma head injury.

////

Decision at 14-15.[2]  Petitioner stated at the suitability hearing that he killed the victim by hitting

him on the head with a bottle and a lamp during a heated argument after petitioner found the

victim molesting a child in their home.  *Id.* at 15-19.

**III.  Analysis**

    **A.  Standards for a Writ of Habeas Corpus**

       Federal habeas corpus relief is not available for any claim decided on the merits in state

court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

       Under section 2254(d)(1), a state court decision is "contrary to" clearly established

United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law

set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially

indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different

result.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406

(2000)).

       Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas

court may grant the writ if the state court identifies the correct governing legal principle from the

Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

case.  *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because

---

    [2]  Petitioner objects to that portion of the statement of facts which states that the
responding officer noticed petitioner appeared to display symptoms of being under the influence
of cocaine or amphetamine.  Pet. at 3-4.  Petitioner prefers the statement of facts read into the
record by his 1996 Board Panel, which indicated that "[t]he officer felt that Mr. Wynn may be
under the influence of some sort of substance."  *Id.* at 3.  Using petitioner's preferred
characterization makes no difference to the outcome of his petition.

1   that court concludes in its independent judgment that the relevant state-court decision applied

2   clearly established federal law erroneously or incorrectly.  Rather, that application must also be

3   unreasonable."  *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not

4   enough that a federal habeas court, in its independent review of the legal question, is left with a

5   'firm conviction' that the state court was 'erroneous.'")

6       The court looks to the last reasoned state court decision as the basis for the state court

7   judgment.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court reaches a

8   decision on the merits but provides no reasoning to support its conclusion, a federal

9   habeas court independently reviews the record to determine whether habeas corpus relief is

10  available under section 2254(d).  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

11      **B.  Exhaustion**

12      Respondent argues that petitioner's claims are unexhausted because they were denied on

13  procedural grounds by the California Superior Court and summarily denied by the California

14  Court of Appeal and California Supreme Court.  He contends that, under these circumstances,

15  petitioner's claims were not "fairly presented" to the state courts.  Answer at 8.

16      Generally, a state prisoner must exhaust all available state court remedies either on direct

17  appeal or through collateral proceedings before a federal court may consider granting habeas

18  corpus relief.  28 U.S.C. § 2254(b)(1).  A state prisoner satisfies the exhaustion requirement by

19  fairly presenting his claim to the appropriate state courts at all appellate stages afforded under

20  state law.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Casey v. Moore*, 386 F.3d 896, 915-16 (9th

21  Cir. 2004).  However, 28 U.S.C. § 2254(b)(2) provides that "[a]n application for a writ of habeas

22  corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the

23  remedies available in the courts of the State."  *See also Cassett v. Stewart*, 406 F.3d 614, 624

24  (9th Cir. 2005) (a federal court considering a habeas petition may deny an unexhausted claim on

25  the merits when it is perfectly clear that the claim is not "colorable").  As discussed below,

26  assuming arguendo that petitioner's claims were not properly exhausted in state court, this court

1   nonetheless finds that the claims should be denied on the merits.

2          When it is clear that a state court has not reached the merits of a petitioner's claim, or has

3   denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a

4   federal habeas court must review the claim de novo.  *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th

5   Cir. 2003).  Petitioner argues that the Superior Court denied his claims on procedural grounds

6   and that this court must therefore review the claims using *de novo* review.  Traverse at 19-21.  It

7   appears from a review of the Superior Court's opinion that petitioner's claims were rejected

8   largely on procedural grounds, but that the court addressed one portion of petitioner's due

9   process claim on the merits.  Answer, Ex. 5.  Under these circumstances, it is not clear whether

10   the state court opinion is based on procedural grounds or on the merits of petitioner's claims.

11   However, even under a *de novo* standard of review, petitioner's claims fail on the merits.

12          **C. Petitioner's Claims**

13               **1. <u>Due Process</u>**

14          Petitioner claims that the Board violated his right to due process because it found him

15   unsuitable for parole based on an outdated psychological report and the unchanging factors of his

16   commitment offense and prior criminal history.  Pet. at 19-32.  He notes that the trial judge

17   acquitted him of first degree murder and argues that this demonstrates his crime was not

18   "especially cruel," contrary to the Board's finding that he was unsuitable for parole because his

19   crime was committed in an "especially cruel and callous manner."  *Id.* at 20-21.  Petitioner also

20   contends that because he met all of the requirements imposed by the Board at the 1996 and 1999

21   suitability hearings, he was entitled to be found suitable for parole at the 2003 hearing.  *Id.* at 13-

22   16.[3]

23   ////

24   

25          [3]  In the petition, petitioner provides summaries of the suitability hearings held in 1996
     and 1999, as well as the hearing on August 20, 2003.  Pet. at 2-18.  Respondent argues that any
26   claims relating to the 1996 and 1999 hearings are untimely filed.  Answer at 8.  However,
     petitioner clarifies in his Traverse that he is challenging only his 2003 hearing.  Traverse at 1.

a. **Applicable Law**

I. **Due Process in the California Parole Context**

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).  *See also Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." *McQuillion*, 306 F.3d at 901 (quoting *Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 12 (1979)).  "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *Pirtle v. California Bd. of Prison Terms*, 611 F.3d 1015, 1020 (9th Cir. 2010) (quoting *McQuillion* , 306 F.3d at 902).  This liberty interest is enforceable under the federal Due Process Clause. *Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (a state parole system that gives rise to a liberty interest in parole release is enforceable under the federal Due Process Clause); *Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010) (denial of parole to a California prisoner "in the absence of 'some evidence' of current dangerousness . . . violat[es] . . . his federal right to due process.")

////

7

In the context of parole proceedings, the "full panoply of rights" afforded to criminal defendants is not "constitutionally mandated" under the federal Due Process Clause.  *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and citation omitted).  The United States Supreme Court has held that due process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the reasons for the denial.  *Hayward v. Marshall*, 603 F.3d 546, 560 (9th Cir. 2010) (en banc) (citing *Greenholtz*, 442 U.S. at 16).  *See also Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving parole issues).  In California, a prisoner is entitled to release on parole unless there is "some evidence" of current dangerousness.  *Hayward*, 603 F.3d at 562; *Cooke*, 606 F.3d at 1213; *In re Lawrence*, 44 Cal.4th 1181, 1210 (2008); *In re Rosenkrantz*, 29 Cal.4th 616, 651-53 (2002).  This requirement of "some evidence" is a component of the liberty interest created by California's parole system and is therefore enforceable under the federal Due Process Clause.  *Cooke*, 606 F.3d at 1213; *Pearson*, 606 F.3d at 610-11.

The recent Ninth Circuit decisions in parole habeas cases establish that the scope of the federally enforceable liberty interest at stake in a habeas petition challenging the denial of parole in California is defined not only in California's statutes and regulations governing parole but also in the California courts' interpretation and application of those laws.  Federal courts presented with a due process challenge to a "California judicial decision approving the . . . decision rejecting parole" must determine whether the state court's decision "was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence."  *Hayward*, 603 F.3d at 562-63; *Pearson*, 606 F.3d at 611.  Accordingly, under AEDPA, this court will review a state court's decision on a habeas challenge to the denial of parole to determine whether its application of the "some evidence" standard was arbitrary or was based on speculative findings, and whether the decision was based on an unreasonable determination of the facts.

1

### ii.  California's Statutes and Regulations on Parole

2    In California, the setting of a parole date for a state prisoner is conditioned on a finding

3    of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  When a federal

4    court assesses whether a state parole board's suitability determination was supported by "some

5    evidence" in a habeas case, the analysis "is framed by the statutes and regulations governing

6    parole suitability determinations in the relevant state."  *Irons v. Carey*, 505 F.3d 846, 851 (9th

7    Cir. 2007).  Under California law, the Governor considers the same factors as the Board in

8    determining whether to affirm or reverse the Board's parole decision.  Cal. Const., art. V,

9    § 8(b); *see also In re Rosenkrantz*, 29 Cal. 4th at 660.  Therefore, the Governor's decision to

10   reverse a parole grant is reviewed under the same procedural due process principles that are used

11   to review challenges to the Board's denial of parole.

12   The state regulation that governs parole suitability findings for life prisoners states as

13   follows with regard to the statutory requirement of California Penal Code § 3041(b):

14   "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied

15   parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to

16   society if released from prison."  Cal. Code Regs. tit. 15, § 2281(a).  In California, the overriding

17   concern in determining parole suitability is public safety.  *In re Dannenberg*, 34 Cal. 4th 1061,

18   1086 (2005).  This "core determination of 'public safety' . . . involves an assessment of an

19   inmates <u>current</u> dangerousness."  *In re Lawrence*, 44  Cal. 4th at 1205.  Accordingly,

20
21
22
>
> when a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings.

23   *Id*. at 1212 (citing *In re Rosenkrantz*, 29 Cal. 4th at 658; *In re Dannenberg*, 34 Cal. 4th at 1071;

24   and *In re Lee*, 143 Cal. App. 4th 1400, 1408 (2006)).

25   ////

26   ////

1   Under California law, prisoners serving indeterminate prison sentences "may serve up to

2   life in prison, but [] become eligible for parole consideration after serving minimum terms of

3   confinement." *In re Dannenberg*, 34 Cal. 4th at 1078.  The Board normally sets a parole release

4   date one year prior to the inmate's minimum eligible parole release date, and does so "in a

5   manner that will provide uniform terms for offenses of similar gravity and magnitude in respect

6   to their threat to the public." *In re Lawrence*, 44 Cal. 4th at 1202 (citing Cal. Penal Code

7   § 3041(a)).  A release date must be set "unless [the Board] determines that the gravity of the

8   current convicted offense or offenses, or the timing and gravity of current or past convicted

9   offense or offenses, is such that consideration of the public safety requires a more lengthy period

10   of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ."  Cal. Penal Code

11   § 3041(b).  In determining whether an inmate is suitable for parole, the Board must consider all

12   relevant, reliable information available regarding

13       the circumstances of the prisoner's social history; past and present
         mental state; past criminal history, including involvement in other
14       criminal misconduct which is reliably documented; the base and
         other commitment offenses, including behavior before, during and
15       after the crime; past and present attitude toward the crime; any
         conditions of treatment or control, including the use of special
16       conditions under which the prisoner may safely be released to the
         community; and any other information which bears on the
17       prisoner's suitability for release.

18   Cal. Code Regs., tit. 15, § 2281(b).

19   The regulation identifies circumstances that tend to show suitability or unsuitability for

20   release.  *Id.*, § 2281(c) & (d).  The following circumstances are identified as tending to show that

21   a prisoner is suitable for release:  the prisoner has no juvenile record of assaulting others or

22   committing crimes with a potential of personal harm to victims; the prisoner has experienced

23   reasonably stable relationships with others; the prisoner has performed acts that tend to indicate

24   the presence of remorse or has given indications that he understands the nature and magnitude of

25   his offense; the prisoner committed his crime as the result of significant stress in his life; the

26   prisoner's criminal behavior resulted from having been victimized by battered women syndrome;

10

the prisoner lacks a significant history of violent crime; the prisoner's present age reduces the probability of recidivism; the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release; institutional activities indicate an enhanced ability to function within the law upon release. *Id.*, § 2281(d).

The following circumstances are identified as tending to indicate unsuitability for release: the prisoner committed the offense in an especially heinous, atrocious, or cruel manner; the prisoner had a previous record of violence; the prisoner has an unstable social history; the prisoner's crime was a sadistic sexual offense; the prisoner had a lengthy history of severe mental problems related to the offense; the prisoner has engaged in serious misconduct in prison. *Id.*, § 2281(c). Factors to consider in deciding whether the prisoner's offense was committed in an especially heinous, atrocious, or cruel manner include: multiple victims were attacked, injured, or killed in the same or separate incidents; the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; the victim was abused, defiled or mutilated during or after the offense; the offense was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable or very trivial in relation to the offense. *Id.*, § 2281(c)(1)(A) - (E).

In the end, under current state law as recently clarified by the California Supreme Court,

> the determination whether an inmate poses a current danger is not dependent upon whether his or her commitment offense is more or less egregious than other, similar crimes. (*Dannenberg, supra*, 34 Cal. 4th at pp 1083-84 [parallel citations omitted].) Nor is it dependent solely upon whether the circumstances of the offense exhibit viciousness above the minimum elements required for conviction of that offense. Rather, the relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude. [citations omitted].

////

1  *In re Lawrence*, 44 Cal. 4th at 1221.

2  ### iii. **California Parole Habeas and Ninth Circuit Law**

3       In addition, in recent years the Ninth Circuit Court of Appeals has concluded that, given

4  the liberty interest that California prisoners have in release on parole, a continued reliance upon

5  an unchanging factor to support a finding of unsuitability for parole over time may constitute a

6  violation of due process.  First, in *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003), the Ninth

7  Circuit Court of Appeals recognized that a continued reliance on an unchanging factor such as

8  the circumstances of the offense could at some point result in a due process violation.  While the

9  court in *Biggs* rejected several of the reasons given by the Board for finding the petitioner in that

10  case unsuitable for parole, it upheld three:  (1) petitioner's commitment offense involved the

11  murder of a witness; (2) the murder was carried out in a manner exhibiting a callous disregard

12  for the life and suffering of another; and (3) petitioner could benefit from therapy.  Id. at 913.

13  However, the court in *Biggs* cautioned that continued reliance solely upon the gravity of the

14  offense of conviction and petitioner's conduct prior to committing that offense in denying parole

15  could, at some point, violate due process.  In this regard, the court observed:

16           As in the present instance, the parole board's sole supportable
             reliance on the gravity of the offense and conduct prior to
17           imprisonment to justify denial of parole can be initially justified as
             fulfilling the requirements set forth by state law.  Over time,
18           however, should Biggs continue to demonstrate exemplary
             behavior and evidence of rehabilitation, denying him a parole date
19           simply because of the nature of Biggs' offense and prior conduct
             would raise serious questions involving his liberty interest in
20           parole.

21  *Id.* at 916.  The court in *Biggs* also stated that "[a] continued reliance in the future on an

22  unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

23  contrary to the rehabilitative goals espoused by the prison system and could result in a due

24  process violation." *Id.* at 917.[4]

25  _____

26       [4] The *Biggs* holding has been acknowledged as representing the law of the circuit. *Irons v. Carey*, 505 F.3d 846, 853 (9th Cir. 2007); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123,

Next, in *Sass*, the Board found the petitioner unsuitable for parole at his third suitability hearing based on the gravity of his offenses of conviction in combination with his prior offenses. 461 F.3d at 1126.  Citing the decision in *Biggs*, the petitioner in *Sass* contended that reliance on these unchanging factors violated due process.  The court disagreed, concluding that these factors amounted to "some evidence" to support the Board's determination.  *Id.* at 1129.  The court provided the following explanation for its holding:

> While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and *could* result in a due process violation." *Biggs*, 334 F.3d at 917 (emphasis added).  Under AEDPA it is not our function to speculate about how future parole hearings could proceed.  *Cf. id.*  The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision.  Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d).

*Id.*

In *Irons* the Ninth Circuit sought to harmonize the holdings in *Biggs* and *Sass*, stating as follows:

> Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in *Sass* precludes us from accepting Iron's due process argument or otherwise affirming the district court's grant of relief.
>
> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence.  Specifically, in *Biggs*, *Sass*, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the

1129 (9th Cir. 2006).

1
2
3
4

> challenged parole denial by the Board.  *Biggs*, 334 F.3d at 912;
> *Sass*, 461 F.3d at 1125.  All we held in those cases and all we hold
> today, therefore, is that, given the particular circumstances of the
> offenses in these cases, due process was not violated when these
> prisoners were deemed unsuitable for parole prior to the expiration
> of their minimum terms.

5
6
7
8
9
10

> Furthermore, we note that in *Sass* and in the case before us there
> was substantial evidence in the record demonstrating
> rehabilitation. In both cases, the California Board of Prison Terms
> appeared to give little or no weight to this evidence in reaching its
> conclusion that Sass and Irons presently constituted a danger to
> society and thus were unsuitable for parole.  We hope that the
> Board will come to recognize that in some cases, indefinite
> detention based solely on an inmate's commitment offense,
> regardless of the extent of his rehabilitation, will at some point
> violate due process, given the
> liberty interest in parole that flows from the relevant California
> statutes.  *Biggs*, 334 F.3d at 917.

11    *Irons*, 505 F.3d at 853-54.

12      In *Cooke*, the Ninth Circuit granted a habeas petition challenging the failure of a Board

13    panel to find the petitioner suitable for parole, finding no evidence other the commitment offense

14    to support the Board's unfavorable suitability decision.  606 F.3d at 1216.  The court noted that,

15    in California, "the aggravated nature of the crime does not in and of itself provide some evidence

16    of current dangerousness to the public unless the record also establishes that something in the

17    prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state,

18    indicates that the implications regarding the prisoner's dangerousness that derive from his or her

19    commission of the commitment offense remain probative to the statutory determination of a

20    continuing threat to public safety."  *Id.* at 1214 (quoting *In re Lawrence*, 44 Cal.4th at 1214).

21    The *Cooke* court concluded that "there must be more than the crime or its circumstances alone to

22    justify the Board's or the Governor's finding of current dangerousness.   *Id.* (emphases in

23    original) (citing *Lawrence*).  *Id.* at 1214.[5]

24

25
26

  [5] In *Hayward*, the Ninth Circuit confirmed that California's parole scheme gives rise to a cognizable liberty interest in release on parole, and explained that the scope of that interest is informed by the requirements of state law.  *Hayward* also overruled *Biggs*, *Sass*, and *Irons*, but only to the extent that those cases could be read "to imply that there is a federal constitutional

### b. **Board Decision**

In addressing the factors it considered in reaching its 2003 decision that petitioner was

unsuitable for parole, the Board in this case stated as follows:

> PRESIDING COMMISSIONER WELCH:  Okay, the Panel
> reviewed all information received from the public and relied on the
> following circumstances in concluding that the prisoner is not
> suitable for parole and would pose an unreasonable risk of danger
> to society or a threat to public safety if released from prison.  The
> offense was carried out in an especially cruel and callous manner.
> The offense was carried out in a dispassionate manner.  Certainly
> we feel that the victim was abused with the number of times that
> he was hit.  The motive for the crime – that's a hard one.  It's kind
> of hard to establish a motive for this crime.  However, it's
> inexplicable whatever it was.  These conclusions were drawn from
> the Statement of Facts wherein on May 27, 1986, the sheriff's
> deputies responded to the victim's residence where they noticed
> that the prisoner had exited the residence.  Deputies also noted that
> the prisoner displayed symptoms of being under the influence of
> some type of substance and paranoid nervous.  The officers entered
> the residence and smelled a strong, pungent odor.  When they went
> into the room, they found the victim who had been basically beaten
> to death.  He had contusions on the victim's back which were
> consistent with the shape of a baseball bat.  The coroner's report
> determined that the victim died of trauma to the head.  The
> prisoner had – did not have a major criminal history.  He had
> mostly traffic violations, failure to appear, but it was all related
> around Vehicle Code violations and there was also grand theft
> larceny that was dismissed.  Under unstable social history,
> certainly we feel that the prisoner have [sic] an unstable social
> history.  At an early age, he ran away from home at the age of 15.
> He even left New Jersey and ended up in California.  So whatever
> was going on his family [sic], it appears that he had an unstable
> social history.  The prisoner recently had programmed in a fairly
> acceptable manner.  However, we do note that he did receive since

---

right [to parole] regardless of whether state law entitled the prisoner to release."  603 F.3d at
555.  *Hayward* did not disturb the holdings in these three cases "with regard to the federally
protected liberty interest created by the state laws and rules governing the California parole
system."  *Pearson*, 606 F.3d at 610, n.3.  The *Hayward* court concluded that on federal habeas
review, a court "need only decide whether the California judicial decision approving the
[Board's] decision rejecting parole was an 'unreasonable application' of the California 'some
evidence' requirement, or was 'based on an unreasonable determination of the facts in light of
the evidence.'"  *Id.* at 563 (quoting 28 U.S.C. § 2254(d)(1)-(2)) (footnotes omitted).  However,
the analysis by the Ninth Circuit of the petitioner's due process claim in *Hayward*, and later in
*Cooke*, *Pirtle*, and *Pearson*, demonstrate that *Hayward* did not effect a significant change in the
analysis previously conducted by federal courts on due process challenges to parole decisions
rendered by the Board of Parole Hearings.

his last hearing several 128 write-ups that was [sic] negative. Psychiatric report, is basically a negative report in terms of the prisoner's suitability for parole.  It raises more questions against suitability than for suitability.  It certainly appears that there are some issues at the time this report was written, that would give the District Attorney concerns and for that matter the Board has concerns about the prisoner's suitability for parole.  And even though there is no diagnosed mental illness, however, there is a personality that, in my opinion, is equally as important in terms of his suitability for parole.  So what we're going to do is request a new psychiatric report since this report was written on 5-20-1999. I guess the manipulation part, how the prisoner uses people, is of particular concern.  However, this is 5-20-99, so it appears that the prisoner have [sic] made some improvement in certain areas, especially in the area of being lazy and self-centered.  It certainly would appear that the prisoner have [sic] made some progress judging from his work reports.  So we're requesting a new psychiatric report.  In response to Penal Code 3042, notices indicate an opposition to a finding of suitability.  The District Attorney from Ventura County spoke in strong opposition of a finding of suitability via letter to the Board.  The Panel makes the following findings:  The prisoner needs to continue to involve himself in positive kinds of programs.  The kinds of programs that would enable him to be able to face, discuss, understand, and cope with stress in a nondestructive manner.  Until enough progress is made, the prisoner continues to be unpredictable and a threat to others.  Nevertheless, the prisoner needs – gains are recent.  He must demonstrate the ability to maintain these gains over an extended period of time.  However, there are some things we want to commend him for.  Certainly his work in PIA is something noteworthy.  The efforts that he made to establish parole plans, that's something else that's noteworthy.  And also I neglected to mention his parole plans.  The prisoner did have some parole plans, but I think I expressed my concerns with at least part of his residential plans.  However, he does have some residential plans. He needs to shore up his employment plans.  And we'd also like to commend the prisoner for not receiving any disciplinaries for – major disciplinaries – serious disciplinaries, I should say, since his last hearing.  We recognize that.  We also want to commend him for all different kinds of self-help programs that he participated in. And certainly we think it's noteworthy to mention, the prisoner's participation in the prison industries work program, the job that he's doing there.  We want to give him some accolades for that. And to encourage him to continue.  However, those positive aspects of his behavior does not outweigh the factors of unsuitability.  Parole will be denied for three years.  In a separate decision, the Hearing Panel finds that it is not reasonable to expect that parole would be granted at a hearing during the following three years.  The specific reasons, the prisoner committed the crime in an especially cruel and callous manner.  Also, certainly the victim was abused.  The offense was carried out in a manner

1    that demonstrates . . .

2    [Interruption in the reading of the decision omitted]

3    PRESIDING COMMISSIONER WELCH: Okay.  Okay, we feel –
     and I'll start at the part after the three year denial.  The prisoner
4    committed the offense in an especially cruel and callous manner.
     The offense was carried out in a dispassionate manner.  Certainly
5    the – By that, I mean, the body remained in the house for a number
     of – a number of days.  Certainly we feel that the victim was
6    abused with the amount of times that he was hit over the head.
     The offense was carried out in a manner that showed a callous
7    disregard for human being [sic].  And the motive for the crime was
     inexplicable or very trivial in relationship to the offense.  Recent
8    psychiatric report shows that the – by Dr. Powell dated 1999 –
     shows that the prisoner – indicates a need for a longer period of
9    observation and evaluation.  The prisoner has not completed
     necessary programming which is essential to his adjustment and
10   needs additional time to gain that programming.  Therefore, a
     longer period of observation and evaluation of the prisoner is
11   required before the Board shall find that the prisoner is suitable for
     parole.  The Panel recommends, one, that you remain disciplinary
12   free.  That includes not getting 128s.  That you continue to work
     towards reducing your custody level.  And that you continue to
13   participate in vocational or educational programs as the may [sic]
     be available to you.  And also we recommend that you continue to
14   participate in self-help programs.

15   Decision at 91-98.

16        The Board also affirmed that a new psychiatric report would be conducted in advance of

17   the next suitability hearing.  *Id.* at 101.  Commissioner Welch explained:

18        And you know what, I'll be real specific on that if you like.  What
          we're requesting that the prisoner's violence potential in the free
19        community be explored.  We think that's significant.  The
          significance of alcohol and drugs as it relates to the commitment
20        offense and the ability – and the prisoner's ability to refrain from
          such use, and the extend [sic] to which the prisoner have [sic]
21        explored his commitment offense and come to terms with the
          underlying causes, and whether or not there's a need for further
22        therapy while incarcerated.

23   *Id.*

24                    **c.  Analysis**

25        After taking into consideration recent Ninth Circuit decisions, and for the reasons set

26   forth below, this court concludes that petitioner is not entitled to federal habeas relief with

                                        17

respect to his due process challenge to the Board's August 20, 2003 decision denying him parole.  The Board's decision that petitioner was unsuitable for parole and that his release would unreasonably endanger public safety was supported by "some evidence" that bore "indicia of reliability."  *Jancsek*, 833 F.2d at 1390.  The Board did not rely on the static factors of the commitment offense alone or petitioner's prior criminal history to find him unsuitable for parole.  Rather, the Board relied on the nature of petitioner's commitment offense, petitioner's prior minimal criminal record, petitioner's unstable social history, some negative institutional behavior, the most recent psychological report which was not particularly supportive of release, and the need for petitioner to attend more prison programs to learn how to deal with stress in a nondestructive manner and to gain more understanding into the reason he committed the crime.[6] These factors cited by the Board find support in the record and constitute "some evidence" supporting its decision that petitioner was not yet suitable for release on parole and would pose an unreasonable risk of danger if released.  *Sass*, 469 F.3d at 1129; *Irons*, 505 F.3d at 665.  Although the psychological report relied on by the Board was several years old, there is no evidence that its conclusions were unreliable in 2003.

This court acknowledges that there is evidence petitioner complied with requests made by former Board panels.  The court also acknowledges that petitioner was acquitted of first degree murder by the trial judge.  The court has reviewed the exhibits filed in support of the petition, which provide evidence in support of petitioner's release on parole.  However, the court concludes that the Board's decision did not result in a due process violation.  This case has not yet reached the point where a continued reliance on an unchanging factor such as the circumstances of the offense in denying parole has violated petitioner's right to due process.

---

[6] The Board also relied on the opposition of the District Attorney to a finding of suitability.  Although opposition to parole by law enforcement is to be considered during the parole process, California Penal Code § 3046(c), "voiced opposition to parole is not an enumerated unsuitability factor . . . and such argument is not evidence of unsuitability."  *Saldate v. Adams*, 573 F. Supp.2d 1303, 1310 (E.D. Cal. 2008).  Accordingly, the opposition of the District Attorney does not constitute "some evidence" that petitioner was unsuitable for parole.

1   Accordingly, petitioner is not entitled to federal habeas relief on his claim that the Board's

2   failure to find him suitable for parole at his August 20, 2003 hearing violated his right to due

3   process.

4                           **2.  State Law Claims**

5          Petitioner claims that the Board's 2003 unfavorable suitability decision violated the

6   California Constitution and state regulations.  *See e.g.*, Pet. at 20-21, 31-32.  He argues that he

7   has already served more time than California law requires for his crime, and that he has served

8   more time in prison than other inmates who have committed similar or more serious crimes.  *Id.*

9   at 31-32.  Petitioner also argues that the Board is required to adhere to a certain formula (the

10  "Matrix System") in setting his release date.  *Id.*

11         These claims, which are based on state law, are not cognizable in this federal habeas

12  corpus proceeding.  *See Rivera v. Illinois*, ___ U.S. ___, 129 S.Ct. 1446, 1454 (2009) ("[A] mere

13  error of state law . . . is not a denial of due process") (quoting *Engle v. Isaac*, 456 U.S. 107, 121,

14  n. 21 (1982) and *Estelle v. McGuire*, 502 U.S. 62, 67, 72-73 (1991)); *Lewis v. Jeffers*, 497 U.S.

15  764, 780 (1990) (federal habeas corpus relief does not lie for errors of state law).  In any event,

16  many of petitioner's arguments in this regard were rejected by the California Supreme Court in

17  *In re Dannenberg*, 34 Cal.4th at 1061 (holding that the Board is not required to refer to its

18  sentencing matrices or to compare other crimes of the same type in deciding whether a prisoner

19  is suitable for parole).  More importantly for purposes of this federal habeas corpus action,

20  petitioner has not cited any federal law for the proposition that the Due Process Clause requires a

21  state parole board to either set a parole date where the board members believe a prisoner poses

22  an unreasonable risk of danger to society, engage in a comparative analysis before denying

23  parole suitability, or set a parole date within a state's "matrix."  Accordingly, petitioner is not

24  entitled to relief on these claims.

25  ////

26  ////

                                    19

### 3. <u>No Parole Policy/Bias of Board Members</u>

Petitioner claims that he was denied parole as a result of the Board's application of a "no-parole policy." Pet. at 32-34. He argues that the Board is "systematically biased in their decisionmaking." *Id.* at 34.

The Ninth Circuit Court of Appeals has acknowledged that California inmates have a due process right to parole consideration by neutral decision-makers. *See O'Bremski v. Maass*, 915 F.2d 418, 422 (9th Cir. 1990) (an inmate is "entitled to have his release date considered by a Board that [is] free from bias or prejudice"). Accordingly, parole board officials owe a duty to potential parolees "to render impartial decisions in cases and controversies that excite strong feelings because the litigant's liberty is at stake." *Id.* (quoting *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981)). Indeed, "a fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). Petitioner is therefore correct that he was entitled to have his release date considered by a Board that was free of bias or prejudice. However, petitioner has failed to substantiate his allegations with credible proof that at the time of the 2003 suitability hearing the Board operated under a no-parole policy or was otherwise biased at the time of his hearing. Nor has petitioner demonstrated that any individual Board members were biased against him personally. Accordingly, petitioner is not entitled to relief on this claim.

### 4. <u>Unconstitutionally Vague Statute</u>

Petitioner also appears to be arguing that the regulations the Board uses to make its suitability decisions contain vague criteria and directly violate his right to due process. Pet. at 22. He specifically objects to the phrase "especially heinous, atrocious or cruel," found in Cal. Code Regs. tit. 15, § 2281(c). *Id.*

A statute or regulation is void for vagueness "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes or if it invites arbitrary and discriminatory enforcement." *United States v. Doremus*, 888 F.2d 630, 634 (9th Cir. 1989). *See*

1  *also Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998) (A statute must be sufficiently

2  clear so as to allow persons of ordinary intelligence a reasonable opportunity to know what is

3  prohibited). "[A] party challenging the facial validity of [a law] on vagueness grounds outside

4  the domain of the First Amendment must demonstrate that the enactment is impermissibly vague

5  in all of its applications." *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959,

6  972 (9th Cir. 2003) (internal quotation marks omitted).  Moreover, "[t]he Due Process Clause

7  does not require the same precision in the drafting of parole release statutes as is required in the

8  drafting of penal laws." *Hess v. Board of Parole and Post-Prison Supervision*, 514 F.3d 909,

9  914 (9th Cir. 2008) (citing *Glauner v. Miller*, 184 F.3d 1053, 1055 (9th Cir. 1999)).

10         The California parole release statute provides a list of five factors to be considered in

11  determining whether a crime is especially "heinous, atrocious or cruel," including whether the

12  offense was carried out in a dispassionate and calculated manner and whether the motive for the

13  crime is inexplicable or very trivial in relation to the offense.  Cal. Code Regs., tit. 15,

14  § 2281(c)(1)(A) - (E).  Because the term "especially heinous, atrocious, or cruel" is further

15  limited by these five detailed factors, it does not appear to be constitutionally vague.  *See Arave*

16  *v. Creech*, 507 U.S. 463, 470-78 (1993) (Idaho death penalty statute which cited as an

17  aggravating factor that the crimes were carried out in "utter disregard for human life" was not

18  impermissibly vague because limiting construction had been adopted defining this factor as

19  demonstrating "the utmost disregard for human life, i.e., the cold-blooded pitiless slayer").  Even

20  assuming the challenged language is unconstitutionally vague, the Board's reliance on several

21  factors, other than factors related to the commitment offense, provides "some evidence" to

22  support the Board's decision.  *See Sass*, 461 F.3d at 1128-29.

23         In addition, California Code of Regulations Title 15, § 2402(c)(1) has not been found to

24  be unduly vague or overbroad under federal law.  Nor has federal law been found to preclude the

25  use of terms such as "especially cruel" or "callous" as guidelines in parole suitability

26  evaluations.  *Cf. Maynard v. Cartwright*, 486 U.S. 356, 363-64 (1988) (in a capital case, the

21

1    "especially heinous, atrocious, or cruel" aggravating circumstance was unconstitutionally vague

2    because it did not offer sufficient guidance to the jury in deciding whether to impose the death

3    penalty); *Tuilaepa v. California*, 512 U.S. 967, 972 (1994) (statutory aggravating circumstances

4    in capital cases "may not be unconstitutionally vague").  Accordingly, petitioner's challenge to

5    California's parole statute on vagueness grounds should be denied.

6              **5.  Eighth Amendment**

7              Petitioner also appears to be raising a claim that the Board's refusal to find him suitable

8    for parole at the 2003 suitability hearing violated his rights pursuant to the Eighth Amendment.

9    Pet. at 22.

10             Successful challenges to the proportionality of particular sentences are "exceedingly

11   rare."  *Solem v. Helm*, 463 U.S. 277, 289-290 (1983).  "The Eighth Amendment does not require

12   strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that

13   are 'grossly disproportionate' to the crime."  *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)

14   (Kennedy, J., concurring) (citing *Solem*).  *See also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003)

15   (two consecutive twenty-five years to life sentences with the possibility of parole did not amount

16   to cruel and unusual punishment); *Ewing v. California*, 538 U.S. 11 (2003) (holding that a

17   sentence of twenty-five years to life imposed for felony grand theft under California's Three

18   Strikes law did not violate the Eighth Amendment); *United States v. Bland*, 961 F.2d 123, 128

19   (9th Cir. 1992) (upholding a life sentence without possibility of parole for being a felon in

20   possession of a firearm where defendant had an extensive criminal record).

21             This case does not present an "exceedingly rare" and "extreme" case where the failure of

22   the Board to find petitioner suitable for parole, thereby continuing his term of imprisonment,

23   runs afoul of Eighth Amendment law as established by the Supreme Court of the United States.

24   Petitioner was convicted of second degree murder in the bludgeoning death of his friend.  In

25   view of the decisions noted above, petitioner's sentence is not grossly disproportionate to this

26   crime.  *See Harmelin*, 501 U.S. at 1004-05 (life imprisonment without possibility of parole for

1  possession of 24 ounces of cocaine raises no inference of gross disproportionality).

2  Accordingly, petitioner is not entitled to relief on his Eighth Amendment claim.

3  **CONCLUSION**

4  For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

5  application for a writ of habeas corpus be denied.

6  These findings and recommendations are submitted to the United States District Judge

7  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

8  after being served with these findings and recommendations, any party may file written

9  objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

11  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

12  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In

13  his objections petitioner may address whether a certificate of appealability should issue in the

14  event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing

15  Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

16  enters a final order adverse to the applicant); *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010)

17  (en banc) (prisoners are required to obtain a certificate of appealability to review the denial of a

18  habeas petition challenging an administrative decision such as the denial of parole by the parole

19  board).

20  DATED:  September 16, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

23